IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ROBERTO CONCEPCION,

    Petitioner,

v.                                           CASE NO. 4:05-cv-392-MMP-AK

JAMES MCDONOUGH,[1]

    Respondent.

_____/

## REPORT AND RECOMMENDATION

This cause is before the Court on Petitioner's petition for writ of habeas corpus. Doc. 1. Respondent has filed a response, Doc. 14, and Petitioner has filed a reply. Doc. 18. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the writ of habeas corpus be denied.

## BACKGROUND

By amended information, Petitioner was charged with one count of burglary of a dwelling with a firearm in connection with a burglary at Ella M. Howard's home, Count One, and four counts of burglary of a dwelling with a firearm, armed robbery with a firearm, and theft of a motor vehicle, in connection with crimes at the home of Roberto Flores, Counts II-V. Doc. 14, Ex. A at 51-52.

---

[1] James Crosby is no longer the Secretary of the Florida Department of Corrections, and his replacement, James McDonough, is hereby substituted as the proper respondent.

At trial, Deputy Sidney Johnson testified that during the course of investigating the incident at the Flores residence, he received a call about a breaking and entering at Ms. Howard's home. Doc. 14, Ex. C at 101-02. After examining the scene outside the Howard home, he determined that the point of entry was a window on the west side of the house because a screen had been removed from the window and there was dirt on the window frame. *Id*. at 104. He also noted some shoe prints under the window. *Id*. at 110. He then entered the home through the back door, which was unlocked, and found the home had been "literally trashed." *Id*. at 105. Johnson was advised by Howard's granddaughter that "a pistol was supposed to be in the home," but he was unable to locate it. *Id*. When he realized a gun was missing from Howard's home, he began to think that the Flores crimes and the Howard burglary might be connected. *Id*. at 107. Johnson also noticed that the vehicle which had been stolen from the Flores residence was parked approximately fifty yards from the Howard home and fifty yards from Petitioner's residence. *Id*. at 108-09.

According to Johnson, Petitioner's name was given to him by persons at the Flores residence. *Id*. at 113. Thus, when he saw the Flores vehicle near Petitioner's home, he went there to investigate. *Id*. Johnson attempted to enter the home with the help of Petitioner's father-in-law, but Petitioner's wife would not let them in. *Id*. at 113-14. Telephone contact was made with Petitioner, and approximately three hours later, he exited the house and was taken into custody. *Id*. at 115-16. Johnson then entered the home to speak with Petitioner's wife, who directed him to an air duct vent in the back bedroom. *Id*. at 117. From that vent, he retrieved a .32 caliber pistol. *Id*. at 117-18. Ms. Howard identified the gun as hers. *Id*. at 128.

Ms. Howard also testified at trial, stating that she kept a gun hidden in a dresser drawer in her bedroom. *Id*. at 43. This was a gun which "had been in [her] possession for [almost ten] years. It was [her] mother's gun." *Id*. at 43-44. On cross-examination, she stated that the gun was a .32 revolver, but she did not know the make. *Id*. at 45. However, there was no "question in [her] mind" that the gun she was shown by the officer and that she identified as hers was in fact her gun. *Id*. at 48.

At the time of his arrest, Petitioner was wearing a pair of Fila[2] tennis shoes. *Id*. at 120. The State's expert crime lab analyst testified regarding the shoe prints left at the scene of the Howard robbery. *Id*. at 84. In his opinion, the "tread design that is in the tracks are similar to the tread design of the shoes" which were taken from Petitioner. *Id*. at 91.

Petitioner was convicted on all counts and was sentenced to life imprisonment as a prison releasee reoffender. Doc. 14, Ex. A at 61-74. He appealed his convictions, challenging the sufficiency of the evidence on all counts. Doc. 14, Ex. D. As to Count I, the Howard count, he argued that the evidence against him was circumstantial, as there "were no fingerprints, eyewitness identifications, fiber evidence, or other specific evidence to tie [Petitioner] to that break-in. In fact, the weapon allegedly taken from the Howard residence was never specifically identified by Ms. Howard as to make or model number, only as to it being a .32 caliber handgun." *Id*. at 14. More specifically, he pointed out

> In the case at bar, the jury could not determine by any competent evidence that the shoes worn by [Petitioner] were in fact the shoes that left the footprints outside the window of the Howard residence. Likewise, the jury could not determine by any

---

[2] The transcript refers to these as "Feela" tennis shoes, but the Court believes the reference is to "Fila" tennis shoes.

>competent evidence, to the exclusion of all other inferences, that the weapon found on or about [Petitioner's] residence was in fact the same weapon that had been taken from or was allegedly missing from the Howard residence. There was no other evidence adduced at trial by the State that would place [Petitioner] in the Howard residence.

*Id*. at 17.

The court affirmed per curiam. Doc. 14, Ex. F.

Thereafter, Petitioner filed a 3.850 motion for post-conviction relief, raising five issues of ineffective assistance of counsel: (1) that counsel was ineffective when he failed to bring to the court's attention that the interpreter was changing counsel's questions and Roberto Flores' answers; (2) that counsel was ineffective when he failed to object to Flores' in-court identification of Petitioner and when he failed to depose Flores; (3) that counsel was ineffective in failing to investigate, object to, and challenge Count V; (4) that counsel was ineffective because the motion for judgment of acquittal was not precise and did not set forth the grounds for relief; and (5) that counsel was ineffective when he failed to strike certain jurors. Doc. 14, Ex. H.

The court granted in part and denied in part the motion and set the matter for evidentiary hearing. *Id*. at 91-94. More specifically, the court found that Petitioner failed "to demonstrate any error in the identification during the trial and completely ignore[d] the testimony" and that counsel could not faulted for "failing to raise a non-meritorious issue." *Id*. at 92. The court also found that Petitioner's challenge regarding Count V was "in reality...an attempt to rehash the sufficiency of the evidence–a matter that should have been the subject of his direct appeal" and concluded that Petitioner had "completely failed to demonstrate that the actions of his counsel were deficient or that but for the actions or inactions of counsel the outcome of the trial would

have been different." *Id*. at 93. The court further determined that while Petitioner "may have made statements, out of court, to his attorney, such statements are not evidence, were not a proper subject for a motion for judgment of acquittal, and could not have been argued by counsel," and thus, counsel "cannot be said to be ineffective in not arguing facts not in evidence." *Id*.

     The court conducted an evidentiary hearing on the remaining two claims, which were denied by written order. The court first addressed the claim that counsel was ineffective "in failing to bring to the Court's attention during the trial that the court interpreter was changing the answers of the witness and the questions being aced the witness by defense counsel." *Id*. at 133. In that regard, the court found that Petitioner had failed to "demonstrate what the inaccuracies were," and accepted counsel's testimony that during trial, Petitioner only told him that Flores was lying and did not bring to his attention any inaccuracies in his testimony until after trial. *Id*. In light of these facts and the fact that counsel "did not speak Spanish and thus had no idea whether the interpreter was accurately interpreting what the witness was saying," the court found that counsel did not act deficiently. *Id*.

     The court then turned to the issue of counsel's effectiveness with regard to jury selection. As to that claim, the court found that although three jurors did have familial ties to law enforcement, each of them had advised the court that "they would have no problem returning a verdict of not guilty if the State failed to prove its case." *Id*. at 134. The court also pointed out that Petitioner "declined to participate in the bench conference where the State and defense counsel exercised their respective peremptory challenges." *Id*. The court further highlighted

counsel's testimony that while he and Petitioner did discuss Petitioner's concerns regarding these jurors, "at no time did [Petitioner] specifically ask for a juror to be excused and that had [Petitioner] done so he would have dismissed the juror if he had peremptory strikes to use" and that "even if he was out of peremptory challenges, if there had been a problem with a prospective juror, he would have asked the Court for an addition challenge...." *Id*. at 135. The court therefore concluded that counsel's actions "demonstrated an exercise of sound trial strategy on his part" and denied that claim as well. *Id*.

Petitioner appealed the denial of all claims except the jury selection claim. Doc. 14, Ex. J at 8-10. The court of appeal found that counsel had acted ineffectively when he failed to challenge the inaccuracies in Flores' testimony and therefore, reversed and remanded for a new trial on Counts II through V, the Flores counts. *Concepcion v. State*, 903 So.2d 247 (Fla. Dist. Ct. App. 2005). More specifically, the court determined that counsel's failure to at least file a motion for new trial after he learned of the "mistranslation information" was deficient and that this deficient performance prejudiced Petitioner's right to a fair trial. *Id*. at 249. In reaching that conclusion, the court examined Flores' identification testimony and the expert's later translation of that testimony and concluded:

> Mr. Flores was in fact the State's key witness as to counts II through V and was, as trial counsel testified at the hearing below, the "sort of glue that brought everything together" in that his testimony provided the only evidence definitively identifying [Petitioner] as the perpetrator of the crimes charged in those counts. The defense pursued by appellant at trial was one of misidentification.

\* \* \*

The expert testimony presented by [Petitioner] at the evidentiary hearing demonstrated that the court interpreter inaccurately translated Mr. Flores's testimony with regard

to his initial in-court identification of appellant as the perpetrator and his reaffirmation of that identification on both cross-examination and redirect examination. *Id*. at 249-50. The court determined that the evidence presented by Petitioner's expert at the evidentiary hearing was "unrefuted and the State does not challenge the accuracy of the translastion"; therefore, "[u]nder these circumstances the verdict is unreliable." *Id*. at 250.

The instant petition followed. On this occasion, Petitioner challenges the sufficiency of the evidence on Count I, the Howard count, and counsel's effectiveness related to his failure to dispute Flores' in-court identification of Petitioner or to depose him and his failure to strike certain jurors. Doc. 1. Each will be considered in turn.

## **DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court

applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id.* at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, ____ U.S. ____, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see*

*also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Finally, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. §§ 2254(b)(1) & (c)). To fully exhaust state remedies, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id*. at 845. In addition, "the federal claim must be fairly presented to the state courts," and it must be "the same claim." *Picard v.*

*Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*). In other words, to exhaust state court remedies fully, the petitioner must "'make the state court aware that the claims asserted present federal constitutional issues.'" *Jimenez v. Florida Department of Corrections*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citation omitted). To raise a federal issue, the petitioner

> can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

Claims which have not been fairly presented to the state court but are defaulted from state court review are considered technically exhausted because no remedies are available for purposes of § 2254(c). *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). *See also White v. State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on post-conviction and were not so raised are procedurally defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750.

    1.    Insufficiency of evidence on Count I.

At no time during Petitioner's direct appeal or in the post-conviction proceedings was the sufficiency of the evidence ever raised as a federal constitutional issue. While the

question of the sufficiency of the evidence on Count I was certainly raised in the direct appeal, it was presented strictly as a state law claim and there is nothing in his appeal which would have fairly alerted the state court to the possibility that he was raising a federal constitutional issue as well. Thus, the claim is not exhausted. Because Petitioner may not now return to state court to litigate this issue, it is procedurally barred from consideration here unless Petitioner can show cause and prejudice for his failure to raise the claim in state court or a fundamental miscarriage of justice if the Court were not to consider the claim on this occasion. He fails in both regards.

Assuming arguendo that the claim was exhausted, it nevertheless is without merit. While the standard in Florida state court may be as Petitioner argued on direct appeal, i.e., "[w]here the evidence is wholly circumstantial, factual sufficiency is determined by whether the evidence is inconsistent with any reasonable hypothesis of innocence...and whether the State presented competent, substantial evidence to support the jury verdict," Doc. 14, Ex. D at 15, the constitutional issue which would be implicated is that guaranteed by the Fourteenth Amendment "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof–defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Jackson*, 443 U.S. at 319, or phrased slightly differently, "whether the

record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id*. at 320.

The Court has reviewed the trial transcript, and the record fully supports the jury's conclusion that Petitioner committed the armed burglary of the Howard home. "Armed burglary requires proof that an offender already was armed or that he armed himself once he entered a structure with the intent to commit *an offense* therein." *Gaber v. State*, 684 So.2d 189, 191 (Fla. 1996) (emphasis in original). A charge of armed burglary "requires no proof that an offender necessarily intended to commit a theft or that the offender committed a theft to arm himself." *Id*. In this case, someone wearing a pair of Fila tennis shoes left shoe prints at the Howard home and the "tread design that is in the tracks [were] similar to the tread design of the [Fila tennis] shoes" which were taken from Petitioner upon his arrest. Someone then ransacked the Howard home, and the only item missing therefrom was a .32 caliber revolver. A .32 caliber revolver, identified by Ms. Howard as indisputably her gun, was then found hidden in Petitioner's home. Taking this evidence in the light most favorable to the State leads only to one conclusion–that the evidence reasonably supports a finding, beyond a reasonable doubt, that Petitioner was the person who surreptiously entered the Howard home and stole Ms. Howard's gun. Thus, no violation of Petitioner's Fourteenth Amendment rights occurred with his conviction on Count I.

2.   Ineffective assistance of counsel.

Because the remaining claims raise the issue of counsel's effectiveness, a review

of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S.

1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was

fundamentally unfair or unreliable.  *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000).  This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

     A.     Failure to challenge Flores' in-court identification.

In this claim, Petitioner charges that counsel acted ineffectively by not challenging Flores' in-court identification of Petitioner as the perpetrator of the crimes at the Flores' residence and by failing to depose Flores before trial so that he as to impeach the in-court identification.  Doc. 1.  In reply, Petitioner furthers his argument, stating that "Flores' in-court identification of him was the cornerstone of the prosecution's entire case against him and was inextricably intertwined with other circumstantial evidence suggesting that Petitioner was in possession of shoes very similar to shoes that left footprints outside the window of Ella Mae Howard's residence."  Doc. 18.  He further contends that the "in-court identification procedure or method employed by the prosecutor at his trial was so unnecessarily suggestive...that his defense counsel performed deficiently in failing to object and move for a mistrial after the trial prosecutor assisted Flores in identifying Petitioner in court...."  *Id*.

The state court has already determined that counsel acted deficiently in failing to challenge inaccuracies in the translation of Flores' in-court identification of Petitioner as the person who robbed him and others at the Flores residence at gunpoint, and that Petitioner was prejudiced thereby.  In reaching those conclusions, the state court made it clear that Flores' testimony impacted only Counts II-V, and while Flores certainly was the State's key witness regarding events at the Flores residence, he offered no testimony whatsoever with regard to the Howard burglary.  Thus, his identification as the perpetrator of the Flores crimes was a matter separate and apart from whether Petitioner burglarized the Howard home, and the prosecutor never attempted to elicit any information from Flores with regard to the Howard burglary.  Counsel therefore had no grounds on which to challenge Flores' testimony with regard to Count I, since Flores had no information regarding the incident at the Howard residence, and nothing Flores said affected the verdict on Count I.

At trial, the officer conducting the Flores investigation initially identified Petitioner as a person of interest with regard to the Flores crimes when someone at the Flores residence gave him Petitioner's name.  When the officer, who had been advised that a firearm had been used in the Flores crimes, saw the stolen Flores vehicle in close proximity to Petitioner's home, he was perfectly justified in following up on the information and approaching Petitioner's home to make a "general inquiry." *United States v. Knight*, 451 F.2d 275, 278 (5th Cir. 1971).  As the officer testified, he essentially put two and two together, i.e., a gun was missing from the Howard home and a gun was

used in the Flores crimes, and thus, the officer had, "at a minimum, reasonable suspicion that criminal activity was afoot." *United States v. Tobin*, 922 F.2d 1506, 1511 (11th Cir. 1991). Reasonable suspicion then justified the officer "approaching [Petitioner's] house to question the occupants." *Id*. Petitioner's arrest for the Howard burglary followed after Ms. Howard's gun was found in the air duct vent of Petitioner's home.

As is clear, besides the officer's vague testimony that someone at the Flores residence gave him Petitioner's name, there is no other connection between anything Flores himself said or anything about his in-court identification which affected the jury's verdict on Count I. Thus, with respect to Count I, the only surviving count after the post-conviction appeal, Petitioner was not prejudiced in the least by counsel's failure to object to the in-court identification or his failure to depose Flores before trial.

      B.      Failure to strike certain jurors.

In his final claim, Petitioner charges that counsel was ineffective "when he failed to honor Petitioner's request and instruction to strike several specified jurors whom were hostile to the defense and Petitioner." Doc. 1 at 6. Petitioner raised this claim in his post-conviction motion, and the state court denied it. Petitioner did not appeal the denial. "In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial." *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979). Because Petitioner did not appeal the denial of the post-conviction motion on this ground, he has not exhausted this claim, and further consideration in this Court is barred unless Petitioner can show cause for his failure to appeal the ineffectiveness of counsel claim

related to jury selection or that a failure to consider the claim will result in a fundamental miscarriage of justice. Petitioner has advanced no argument whatsoever regarding his reason for failing to exhaust this claim, focusing instead on the merits of the claim. In that regard, the Court has hesitation in finding that in light of the answers given by the challenged jurors during voir dire that their familial ties to law enforcement would not affect their verdicts, counsel did not act deficiently in failing to strike them on that ground alone. Juror selection is a complex process and involves a myriad of considerations. While ties to law enforcement are certainly matters to be considered, there is no implied bias merely because of those ties. Even so, assuming counsel should have struck all four of the jurors now challenged by Petitioner, the Court does not find any prejudice from their being on the jury. In this Court's view, the jury's verdict of guilty on Count I for the burglary of the Howard residence was "substantially supported by the evidence," and thus, there is not a reasonable probability that, but for counsel's failure to strike these jurors, the result of the proceeding would have been different. *Jackson v. Herring*, 42 F.3d 1350, 1362 (11th Cir. 1995); *see also Baldwin v. Johnson*, 152 F.3d 1304, 1315-16 (11th Cir. 1998).

**CONCLUSION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Petitioner's petition for writ of habeas corpus, Doc. 1, be **DENIED**, and this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS** at Gainesville, Florida, this  4th   day of December, 2007.


S/A. Kornblum
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**